UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AW INDUSTRIES, INC.,

                        Plaintiff,                          **REPORT AND RECOMMENDATION**

   -against-

                                                                        CV-07-3969 (SLT) (JMA)

SLEEP WELL MATTRESS, INC.,

                        Defendant.
-------------------------------------------------------------------X

A P P E A R A N C E S:

Abbie Eliasberg Fuchs, Esq.
Andrew J. Orenstein, Esq.
Harris Beach PLLC
100 Wall Street
New York, NY 10005
    *Attorneys for Plaintiff*

**AZRACK**, **United States Magistrate Judge:**

By Order dated June 27, 2008, the above-captioned action was referred to me by the Honorable Sandra L. Townes for a report and recommendation concerning default judgment, damages, injunctive relief, attorneys' fees and costs to be awarded to plaintiff as against defendant for alleged violations of the Lanham Act and New York law.

For the reasons set forth below, I respectfully recommend that (1) default judgment be entered against defendant; and (2) that plaintiff be awarded a total of $321,794.26, reflecting $300,000.00 in trebled damages, $19,469.30 in attorneys' fees and $2,324.96 in costs. I further recommend that plaintiff's application for injunctive relief be granted.

I.  BACKGROUND

On September 21, 2007, AW Industries, Inc. ("AW" or "Plaintiff"), a Maryland corporation, commenced this action against Sleep Well Mattress, Inc. ("SWM" or "Defendant"), a New York corporation located in Queens County. (Compl. ¶¶ 2-3.) Since 1991, AW has owned a trademark on the term "SLEEPWELL" and sells mattresses and related products under this mark nationally. (Id. ¶ 6-7.) AW asserts that SWM manufactures and sells bedding products that infringe on the SLEEPWELL mark, and that SWM engages in misleading sales practices related to these products. (Id. ¶¶ 13-15.) AW further states that SWM has used the SLEEPWELL mark without AW's authorization or consent for a significant period of time. (Id. ¶ 14-15.) Specifically, the complaint alleges counterfeiting, unfair competition and false advertising in violation of the Lanham Act. (Id. ¶¶ 21-37.) AW further alleges trademark infringement and unfair competition in violation of New York law. (Id. ¶¶ 38-44.)

Following several unsuccessful attempts to personally serve SWM at its place of business, service was made upon the New York Secretary of State. (See Mot. for Default J., Ex. 1: Affirm. of Andrew J. Orenstein. ("Orenstein Affirm.") ¶¶ 4-5.)[1] Approximately five months following service of the complaint, an individual who identified himself as a representative of SWM telephoned counsel for AW, inquired about the case, indicated that he was in receipt of the papers filed by AW, and was advised to consult with an attorney. (Id. ¶ 7.) However, SWM failed to file an answer or otherwise move with respect to the complaint, and the time to do so has expired.

---

[1] The record indicates that a process server attempted to personally serve SWM at 177-18 104th Avenue in Jamaica, NY on October 1, 27 and 29, 2007. On each occasion, an individual identified only as "Jane Doe" refused to accept service. (See Dkt. No. 6: Summons Returned Unexecuted.) Service was made upon the Secretary of State on October 5, 2007. (See Dkt. No. 5: Summons Returned Executed.)

II.  DISCUSSION

A.  Liability

As noted in my prior Scheduling Order (see Dkt. No. 14), Federal Rule of Civil Procedure 55 and Local Rules 55.1 and 55.2 govern the entry of default judgments.  Rule 55(a) provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).  Local Rule 55.1 further instructs that

> A party applying for a certificate of default by the clerk pursuant to Federal Rule of Civil Procedure 55(a) shall submit an affidavit showing (1) that the party against whom a notation of default is sought is not an infant, in the military, or an incompetent person; (2) that the party has failed to plead or otherwise defend the action; and (3) that the pleading to which no response has been made was properly served.

Plaintiff has complied with these requirements, and the Clerk of the Court duly noted the default of the defendant on February 13, 2008.  (See Dkt. No. 8.)  Accordingly, I respectfully recommend that default judgment be entered against SWM.

B.  Inquest Standards

Defendant's default amounts to an admission of liability.  Thus, all of the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true; however, plaintiff must prove damages before the entry of a final default judgment.  See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  The district court must conduct an inquiry to ascertain the amount of damages with reasonable certainty.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that when granting a default judgment, if "it is necessary to take an account or to determine the

amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ."

The Second Circuit has held that, under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (quoting Fustok v. ContiCommodity Serv. Inc., 873 F.2d 38, 40 (2d Cir. 1989)). In the instant case, a hearing is not necessary. Both parties were given an opportunity to request a hearing or to submit documentation regarding damages. (See Dkt. No. 14.) A hearing was not requested. AW's uncontested submissions provide an adequate basis for awarding damages and injunctive relief.

C. Monetary Damages

Section 35(a) of the Lanham Act governs claims for monetary relief and attorneys' fees made by plaintiffs who have successfully established a trademark violation. 15 U.S.C. § 1117. Under the statute, plaintiff is entitled, subject to the principles of equity, to recover: (1) defendant's profits; (2) any damages sustained by plaintiff; and (3) the costs of the action. 15 U.S.C. 1117(a). "[T]he statute's invocation of equitable principles as guideposts in the assessment of monetary relief vests the district court with some degree of discretion in shaping that relief." George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992) (citing 15 U.S.C. § 1117(a) (both damage and profit awards may be assessed "according to the circumstances of the case")). However, "[this] discretion must operate within legally defined parameters." Id. Under the statute, in order for the Court to assess profits, plaintiff must prove defendant's sales. 15 U.S.C. § 1117(a). Here, because SWM has defaulted and failed to provide any discovery, this information is not available to AW. (See Pl.'s Mem. in Supp. of Injunctive Relief, Damages and

Fees ("Pl.'s Mem. II")[2], Ex. 1: Affirm. of Stuart Bannett in Supp. of Request for Relief ("Bannett Affirm.") ¶¶ 9-10.)

Because it cannot demonstrate SWM's sales, AW proposes two methods for calculating its damages. The first method relies on the lengthy industry experience of AW's President, Stuart Bannett, who opines that retail bedding operations similar to SWM require $500,000.00 in annual sales in order to remain in business. (Bannett Affirm. ¶ 11-12.) Mr. Bannett further states that SWM has been infringing on the AW trademark for at least five years. (Id. ¶ 13.) Utilizing this approach will result in estimated damages of $2,500,000.00. (Id. ¶ 14.) Alternatively, AW's second proposed method for calculating its damages relies upon the application of an industry standard four-percent licensing fee to SWM's estimated annual sales over a five-year period. (Id. ¶ 15-18.) This approach results in damages of $100,000.00.

Plaintiff notes that its second alternative method of estimating damages was approved by the Second Circuit in Deering, Milliken & Co. v. Gilbert, 269 F.2d 191 (2d Cir. 1959). In Deering, the court held that the failure to produce evidence concerning actual sales exposed defendant to "less definite and certain methods of proof." 269 F.2d at 193 (citations omitted). Moreover, "plaintiff need only establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement." Id. (citations omitted).

Although this method of calculating damages is speculative, I find it to be reasonable and appropriate. The amount requested is not excessive and, moreover, it is defendant who is to blame for the inability to calculate an exact figure. See Ermenegildo Zegna Corp., v. 56th Street Menswear, Inc., CV-06-7827, 2008 WL 4449533, at *5 (S.D.N.Y. Oct. 2, 2008) ($1,000,000.00

---

[2] In this case, AW has filed two memoranda of law. For purposes of clarity and brevity, Plaintiff's Memorandum of Law in Support of Its Motion for Default Judgment, filed on July 23, 2008 is referred to in this report as "Pl.'s Mem. I". (See Dkt. No. 13.) Plaintiff's Memorandum of Law in Support of Its Demand for Injunctive Relief, Damages, and Fees, filed on January 12, 2009 is referred to as "Pl.'s Mem. II". (See Dkt. Nos. 17-18.)

award appropriate where "defendant's failure to respond to the papers seeking a default judgment has left the Court with no information as to any of the factors relating to the defendant's circumstances."); Phat Fashions LLC v. Blue Max Corp., CV-01-3933, 2005 WL 1221838, at *2 (S.D.N.Y. May 2, 2005) ("In the absence of any information . . . on costs, and because [defendant] has not cooperated in discovery, the Court finds that . . . estimated sales are a fair indicator of profits."). Furthermore, I find that this more conservative approach to determining AW's damages in this case comports with the equitable principals underlying 15 U.S.C. § 1117.[3]

Next, AW requests a trebling of these damages. Under § 1117, courts have discretion to increase an award to three times actual damages or to otherwise adjust the award if the amount of the recovery based on profits is either inadequate or excessive, but only to "constitute compensation and not a penalty." 15 U.S.C. 1117(a). On the other hand, subsection (b) mandates trebling § 1117(a) damages upon a finding of willfulness, absent extenuating circumstances, "to deter potential counterfeiters." 15 U.S.C. § 1117(b); see also Sara Lee Corp. v. Bags of New York, Inc., 36 F.Supp.2d 161, 165 (S.D.N.Y. 1999). SWM has defaulted in this case, which deems it a willful infringer. Malletier v. Whenu.com, Inc., CV-05-1325, 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007). Additionally, deterrence is appropriate in this case because SWM has ignored repeated attempts by AW to rectify the infringing activity.[4] Therefore, treble damages are appropriate under § 1117 and I respectfully recommend that AW be awarded a total of $300,000.00 in damages for infringement.

---

[3] While plaintiff here seeks recovery under 15 U.S.C. § 1117(a), it is worth noting that § 1117( c) provides for statutory damages as "an alternative to traditional awards based on actual losses." Sara Lee Corp. v. Bags of New York, Inc., 36 F.Supp.2d 161, 165 (S.D.N.Y. 1999). Under § 1117(c), up to $1,000,000.00 per counterfeit mark may be awarded in cases of willful infringement. In this case, although AW has not elected to do so, that § 1117(c) could be invoked—potentially triggering substantially higher damages—further supports the application of AW's proposed damages based upon a hypothetical licensing arrangement between AW and SWM.
[4] See infra, § II. E.

D. <u>Reasonable Attorneys' Fees</u>

The Lanham Act authorizes the award of attorneys' fees to prevailing parties in "exceptional cases." 15 U.S.C. 1117(a). The Second Circuit has explained that such awards are appropriate in instances of "fraud or bad faith," or "willful infringement." <u>Patsy's Brand, Inc. v. I.O.B. Realty, Inc.</u>, 317 F.3d 209, 221 (2d Cir. 2003) (internal citations omitted). The allegations in the instant complaint, along with SWM's default, are sufficient to justify an award of attorneys' fees in this case. <u>See</u> <u>Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.</u>, CV-03-2132, 2006 WL 728407, at *7 (S.D.N.Y. Mar. 21, 2006) ("defendant's infringement has been deemed willful by virtue of its default in this action," thus permitting the award of reasonable attorneys' fees under 15 U.S.C. § 1117(a)); <u>Phat Fashions LLC v. Blue Max Corp.</u>, CV-01-3933, 2005 WL 1221838, at *2 (S.D.N.Y May 2, 2005) (Defendant "has failed to present any evidence [on the inquest] to contradict the assertions in the complaint [of deliberate and willful infringement], and it has used marks with similarities to plaintiff's mark. I find that its willful conduct justifies an award of attorney's fees.")).

The Second Circuit utilizes a "presumptively reasonable fee" standard to determine appropriate attorneys' fees for federal claims. <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182 (2d Cir. 2008). In calculating the "presumptively reasonable fee," the district court should look to what a "reasonable, paying client, who wishes to pay the <u>least amount necessary</u> to litigate the case effectively" would be willing to pay. <u>Id.</u> at 184, 190 (emphasis added). As the Second Circuit further explained, the calculation of a reasonable hourly rate requires the Court to consider a variety of factors, including those discussed in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974). <u>See</u> <u>Arbor Hill</u>, 522 F.3d at 186-87

n.3.[5]  Finally, district courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and the rates charged in a given case."  Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). Accordingly, the reasonableness of both the hourly rates at which AW's attorneys seek to be compensated and the number of hours for which they seek reimbursement is examined below.

      1.  Hourly Rates

AW is represented in this case by Offit Kurman P.A. ("Offit Kurman"), a Maryland-based law firm.  (See Pl.'s Mem. II, Ex. 3: Affidavit of Abbie Eliasberg Fuchs ("Fuchs Aff.") ¶ 9.)  Offit Kurman, in turn, retained the New York office of Harris Beach PLLC ("Harris Beach") as co-counsel.  (Id.)  The primary attorney handling this action is Ms. Fuchs, a member of Harris Beach. (Id.)  During 2007 and 2008, Ms. Fuchs billed at a rate of $325.00 per hour and, as of 2009, $345.00 per hour.  (Id. ¶ 10.)  Other Harris Beach attorneys involved in this action are Neal Slifkin, who billed at $325 per hour in 2007; Andrew Orenstein who billed at $275 per hour in 2007 and now bills at $295 per hour; and Abby Volin, whose hourly rates were, and are, identical to Mr. Orenstein's.  (Id. ¶ 11.)  Two Offit Kurman attorneys also worked on this case, Harold M. Walter and Eric Pelletier.  (Id.)  Mr. Walter billed at $375 per hour in 2007 and $395 per hour in 2008.  (Id.)  Mr. Pelletier billed at $325 in 2008.  (Id.)

I find that these hourly rates are similar to rates approved in intellectual property cases in both the Eastern and Southern Districts of New York and, moreover, are not unreasonable.  See Microsoft Corp. v. Computer Care Center, Inc., CV-06-1429, 2008 WL 4179653, at *14-15 (E.D.N.Y. Sept. 10, 2008) (Townes, J.) (hourly rates in 2007 of $500 for partners and $385 for

---

[5]  These factors include (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the scope of the misconduct and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Johnson, 488 F.2d at 717-19.

associates not unreasonable); Stevens v. Aeonian Press, Inc., CV-00-6330, 2002 WL 31387224, at *5 (S.D.N.Y. Oct. 23, 2002) (hourly rates in 2002 of $460 for partners and $330 for associates not unreasonable).

2. Hours Expended

A party seeking a fee award must support the request with contemporaneous time records detailing, "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). The Court must assess the reasonableness of the time expended and adjust those portions of an invoice that reflect "excessive, redundant or otherwise unnecessary" hours. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

In this case, AW submitted billing records in support of its request for attorneys' fees in the amount of $29,204.00. (See Pl.'s Mem. II, Ex. 2.) Perhaps tellingly, neither these records nor lead counsel's affidavit in support of the fee request provided the court with a summary number stating the total hours expended on this case. As a result of this apparent oversight, the Court was compelled to manually calculate the billing records submitted by both firms. This time-consuming process revealed that counsel seeks reimbursement for 104.4 hours of billed legal services in this uncontested matter.[6]

The Court finds it incredible that over 100 hours were expended by a total of six attorneys in an action as straightforward as the instant case. "The time and labor required for seeking a judgment by default, pursuant to Fed. R. Civ. P. 55 and based on the defendant's failure to plead

---

[6] The Harris Beach PLLC time records indicate the following billing entries: September 2007—5.5 hours; October 2007—0.5 hours; January 2008—13.3 hours; February 2008—29 hours; March 2008—4.7 hours; April 2008—0.7 hours; May 2008—1.1 hours; June 2008—1.1 hours; July 2008—11 hours; September 2008—0.8 hours; October 2008—1.9 hours; November 2008—1.8 hours; December 2008—3.4 hours. The Offit Kurman P.A. records reflect the following billed hours: June 2007—3.6 hours; July 2007—1.1 hours; September 2007—0.3 hours; October 2007—0.4 hours; January 2008—1.4 hours; February 2008—3.8 hours; March 2008—1.2 hours; May 2008—0.3 hours; June 2008—2.3 hours; July 2008—3.7 hours; August 2008—3.5 hours; September 2008—0.2 hours; November 2008—0.2 hours; December 2008—7.6 hours. (See Pl.'s Mem. of Law II, Ex. 2.)

or otherwise defend, as well as the level of skill required to perform the legal tasks in connection with it, are . . . de minimis." Days Inn Worldwide, Inc. v. Amar Hotels, Inc., CV-05-10100, 2008 WL 2485407, at *9 (S.D.N.Y. June 18, 2008) (finding that no reasonable paying client would be willing to pay for 95 hours totaling $20,057.54 in fees and reducing total fee award by seventy-five percent); see also Microsoft Corp. v. Computer Care Center, Inc., CV-06-1429, 2008 WL 4179653, at *15 (E.D.N.Y. Sept. 10, 2008) (Townes, J.) (finding a one-third reduction of fee award appropriate in a default case where "staffing of the case resulted in an unreasonable allocation of the litigation tasks involved").

Having thoroughly reviewed the submitted records, the Court concludes that counsel expended an excessive amount of time litigating this routine and uncomplicated Lanham Act case. In making this determination, I have considered, inter alia, the following factors: defendant is in default and this motion is undisputed; the activities of the case, as reflected by entries on the docket sheet, were simple and few; no novel or particularly difficult issues of law were implicated; and several entries in the billing records lacked sufficient detail.[7]  Accordingly, I respectfully recommend that the total fee award be reduced by one-third and that AW be awarded $19,469.30 in attorneys' fees.  See In Re Agent Orange Product Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) ("the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'") (quoting Carey, 711 F.2d at 1146); LaBarbera v. J.E.T. Res., Inc., 396 F.Supp.2d 346, 352 (E.D.N.Y. 2005) ("when there is a fee application containing excessive hours, it is within the discretion of the district court to make an across the board percentage reduction.")

---

[7] For example, a February 4, 2008 entry indicates that 0.3 hours were billed for a telephone call "regarding trade show and photographs," a July 24, 2008 entry indicates that 2.2 hours were billed for "[l]egal research re: priority of trademark filing based on foreign application," and a November 20, 2008 entry reflects 0.2 hours billed for a "[t]elephone conference with Jon Wachs re: violation of Sleepwell trademark in Tennessee . . . ." See Pl.'s Mem. II, Ex. 2.

E.  Costs

Courts generally award costs to prevailing parties in Lanham Act actions. See 15 U.S.C. § 1117(a) ("the plaintiff shall be entitled . . . to recover . . . the costs of the action"). In addition to the court filing fee, "[o]ut of pocket litigation costs are generally recoverable if they are necessary for the representation of the client." Tri-Star Pictures v. Unger, 42 F.Supp.2d 296, 306 (S.D.N.Y. 1999). As a result of SWM's default, AW has prevailed and is therefore entitled to recover reasonable costs. Specifically, AW requests $2,324.96 in costs for the filing fee, a process server, photocopies and computer research. (See Pl.'s Mem. II, Ex. 2: Contemporaneous Time Records; Id. at Ex. 3: Fuch's Aff. ¶ 22.)

Expenditures pertaining to photocopies, court-imposed filing fees, process servers, and transcripts are all routinely recoverable. See, e.g., Simmons v. N.Y. City Transit Auth.,CV-02-1575, 2008 WL 630060, at *7 (E.D.N.Y. Mar. 5, 2008). Plaintiff's itemized records reflect the following amounts for these expenses: (1) $195.00 process server fee; (2) $34.80 for photocopies and (3) $350 court filing fee. Plaintiff also seeks $1,745.16 in electronic research costs. In Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004), the Second Circuit explained that, in the context of a statutory fee-shifting provision, the costs of electronic research may be included in a fee award when the party seeking such costs "normally bills its paying clients for the cost of online research services . . . ." Id.; see also Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F.Supp.2d 274 (E.D.N.Y. 2008). In this case, it appears from the submitted records that these costs were billed to AW. Accordingly, I recommend that AW be awarded costs in the total amount $2,324.96.

11

F.  Injunctive Relief

Lastly, plaintiff requests, inter alia, that defendant: (1) be permanently enjoined from using plaintiff's trademark; and (2) be directed to deliver up for destruction all materials in its possession or control bearing plaintiff's trademark. (See Pl.'s Mem. II at 7-8.)

The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) . . . ." 15 U.S.C. § 1116(a). To obtain permanent relief, plaintiff "must demonstrate both the likelihood of irreparable injury in the absence of such an injunction, and success on the merits." Martal Cosmetics, Ltd. V. Int'l Beauty Exchange, Inc., CV-01-7595, 2007 WL 895697, at *35 (E.D.N.Y. Mar. 22, 2007) (citing Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006)). SWM's default constitutes an admission of liability; therefore, AW has achieved actual success on the merits. See, e.g., DCH Auto Group (USA), Inc. v. Fit You Best Auto., Inc., CV-05-2973, 2006 WL 279055, at *9 (E.D.N.Y. Jan. 10, 2006).

In order to establish that a likelihood of irreparable injury exists, plaintiff must demonstrate that there is a likelihood of confusion regarding the source of the goods at issue. See Brennan's, Inc. v. Brennan's Rest., LLC, 360 F.3d 125, 129 (2d Cir. 2004) ("proof of a likelihood of confusion establishes . . . irreparable harm.") Plaintiff need "only raise a serious question of likelihood of confusion." Am. Cyanamid v. Campagna per le Farmacie in Italia, S.P.A., 847 F.2d 53, 55 (2d Cir. 1988) (internal citation omitted). Courts consider a number of factors to determine if a likelihood of confusion exists, "including (1) the strength of the mark; (2) the similarity between the two marks; (3) the proximity of products in the marketplace; (4) the evidence of actual confusion; (5) defendant's bad faith; (6) the quality of defendant's product or service; and

(7) the sophistication of the relevant consumer group." Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service, LLC, 553 F.Supp.2d 201, 206 (E.D.N.Y. 2008) citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). "Although no one factor is necessarily dispositive, any one factor may prove to be so." Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114, 119 (2d Cir.2001). Here, AW alleges that SWM's unauthorized use of its mark in the bedding industry has and is likely to continue to cause confusion in the marketplace. (Compl. ¶¶ 24-25.) AW further states that SWM has continued to infringe on its mark despite knowledge of AW's rights. (Id. ¶ 26.)

With regard to the strength of the SLEEPWELL mark, trademarks registered with the United States Patent and Trademark office are "presumed to be distinctive and should be afforded the utmost protection." Lois Sportswear, U.S.A. Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986). Furthermore, AW enhances the strength of its mark by garnering positive media attention through the extensive advertising and promotion of products bearing the SLEEPWELL mark. (See Compl. ¶¶ 11-12.) Accordingly, I find that AW has sufficiently demonstrated the strength of its trademark.

Next, although AW has not submitted evidence of actual consumer confusion, I find that because AW and SWM manufacture and sell similar bedding products, SWM's use of a name that incorporates AW's mark is likely to cause continuing and future confusion regarding the source of SWM's products. See Lois Sportswear, 799 F.2d at 875 ("actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."); Collins v. Aztar Corp., 210 F.3d 354 (2d Cir. 2000) (permanent injunctive relief is appropriate upon proof of the likelihood that consumers will be misled in the future).

Finally, the facts asserted in the complaint concerning a likelihood of confusion regarding the source of SWM's products are uncontested and further bolstered by SWM's bad faith. For example, prior to the filing of this action, SWM ignored a "cease and desist" letter which included a copy of AW's trademark registration—clearly informing SWM of AW's rights concerning the SLEEPWELL mark. (See Compl. ¶ 16.) Additionally, as noted above, a SWM representative refused service of the complaint on three separate occasions.

Considering the relevant factors, including, inter alia, the strength of the SLEEPWELL mark, the similarities between AW and SWM products, and SWM's continuing infringement despite its knowledge of AW's rights, I find that there is sufficient evidence to strongly indicate that, absent an injunction, SWM will continue to infringe the SLEEPWELL mark, resulting in future injury to AW. Accordingly, I recommend that AW's application for injunctive relief be granted. I further recommend that an order issue:

(1) enjoining SWM and its agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations, and all others in privity or acting in concert with SWM from: (i) using the SLEEPWELL trademark and any other trademark containing the term SLEEPWELL or otherwise confusingly similar to the SLEEPWELL trademark, including the name SWM MATTRESS, INC. in the marketing, offering for sale, providing and/or sale of mattresses, box springs, bed foundations, or any other goods that are related to the goods offered, provided, and sold under the SLEEPWELL trademark; (ii) using false representations or descriptions in commerce, or using false designations of origin, that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of defendant with plaintiff or as to the origin, sponsorship, or approval of defendant's goods by plaintiff; (iii) otherwise infringing the

SLEEPWELL trademark; (iv) unfairly competing with plaintiff or otherwise injuring its business reputation in any manner; and

(2) directing SWM to deliver up for destruction all advertisements, labels, tags, signs, prints, packages, wrappers, receptacles, computer memory, data, computer programs, software, or any other media, and all other materials in its possession or under its control bearing the SLEEPWELL trademark or any other trademark containing the term SLEEPWELL, or any reproduction, counterfeit, copy, or colorable imitation of the SLEEPWELL trademark, and all plates, molds, matrices, and other means of making or duplicating same. See 15 U.S.C. §§ 1116 and 1118.

## III. CONCLUSION

For the forgoing reasons, I respectfully recommend that (1) default judgment be entered against defendant; and (2) that plaintiff be awarded a total of $321,794.26, reflecting $300,000.00 in trebled damages, $19,469.30 in attorneys' fees and $2,324.96 in costs. I further recommend that plaintiff's application for injunctive relief be granted.

Plaintiff is directed to serve a copy of this report and recommendation on defendant and to promptly file proof of service by ECF. Any objections to this report and recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6.

SO ORDERED.

Dated: January 30, 2009
      Brooklyn, New York

                                               /s/_____
                                               JOAN M. AZRACK
                                               UNITED STATES MAGISTRATE JUDGE